## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Sean Wright,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Target Corporation,<br><br>　　　　　Defendant. | Case No. 14-cv-3031 (SRN/HB)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Mark T. Lavery, Hyslip & Taylor LLC LPA, 1100 W. Cermak, Suite B410, Chicago, Illinois 60608; J.D. Haas, J.D. Haas & Associates PLLC, 9801 Dupont Avenue South, Suite 430, Bloomington, Minnesota 55431, for Plaintiff.

Brian Melendez, Dykema Gossett PLLC, 4000 Wells Fargo Center, 90 South Seventh Street, Minneapolis, Minnesota 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

　　　This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment [Doc. No. 19] and Defendant's Motion for Summary Judgment [Doc. No. 31]. For the reasons set forth below, the Court denies both motions.

## I.　　BACKGROUND

　　　Plaintiff Sean Wright brings this suit against Defendant Target Corporation ("Target") alleging that Target contacted Plaintiff on his cellular telephone, in violation of the Telephone Consumer Protection Act (TCPA).  (See Compl. ¶¶ 24-27 [Doc. No. 1].) In April 2013, Wright, a resident of West Virginia, signed a Joint Account Request and Agreement ("Joint Account Agreement"), in which he agreed to be added to an existing Target credit card account that was issued in the name of his former wife.  (Joint Account

Agreement, Ex. F to Lavery Cert. [Doc. No. 22-6 at 15].)  The Target credit card was

serviced by Target Corporation's subsidiary Target Corporate Services, Inc., which

provides collection services on Target credit card accounts.  (Wolf Decl. ¶ 1 [Doc. No.

34].)

> The Joint Account Agreement included the following statement:

> You are requesting that you be added to the account referenced above as a joint accountholder and that a credit card be issued to you.  You agree to be bound by the Credit Card Agreement that will be sent to you along with your credit card and you, jointly and individually, promise to pay and be liable for, all amounts charged to the account under the terms set forth in the Credit Card Agreement. . . .  Once you are added to the above referenced account as a joint accountholder you become a permanent joint accountholder and your name cannot be removed in the future.

(Joint Account Agreement, Ex. F. To Lavery Cert. [Doc. No. 22-6 at 15].)  The Joint

Account also included a statement, in bold-face type, concerning telephone

communications from Target:

> **YOU CONSENT TO RECEIVING AUTODIALED AND PRERECORDED MESSAGE CALLS FROM US, OR THOSE ACTING ON OUR BEHALF OR TARGET CORPORATION, ITS AFFILIATES OR THOSE ACTING ON TARGET'S BEHALF, AT ANY MOBILE TELEPHONE NUMBER YOU PROVIDE.**

(Id.)  Directly below the bold-face section quoted above, Wright provided the number

XXX-XXX-5651 (id.), which was his mobile telephone number.  (Pl.'s Am. Resp. to

Def.'s Req. for Admission, ¶ 7, Ex. C to Lavery Cert. [Doc. No. 22-3].)

> The Target Consumer Credit Agreement applicable to Wright's Target credit card

account also contained the following provisions:

> 12. COMMUNICATIONS WITH YOU – We or our agents may call by telephone regarding your Account.  You agree that we may place such calls

using an automatic dialing/announcing device. You agree that we may
make such calls to a mobile telephone or other similar device. You agree
that we may, for training purposes or to evaluate the quality of our service,
listen to and record phone conversations you have with us.

13. WHAT LAW APPLIES – This Agreement will be governed by federal
law and to the extent state law applies, by the law of South Dakota. If there
is any conflict between any of the terms and conditions of this Agreement
and applicable federal or state law, this Agreement will be considered
changed to the extent necessary to comply with the law.

\*\*\*

17. CHANGES TO THIS AGREEMENT – We have the right to change
this Agreement (including the right to add additional terms) and to apply
those changes to any existing balance on the Account as permitted by law.
We will provide you with notice of any such changes as required by
applicable law.

(Target Consumer Credit Agreement, Ex. F to Lavery Cert. [Doc. No. 22-6 at 19].)

In April 2014, Target began phoning Wright's cell phone number regarding an

outstanding balance on the Target credit card account. (Answer ¶ 10, Ex. A to Lavery

Cert. [Doc. No. 22-1].) Target admits that it used an automated dialing system to call

Wright on this occasion (id. ¶ 11), and multiple occasions, for non-emergency purposes.

(Id. ¶ 25.) During an April 29, 2014 call, Wright informed Target that the account was

not his and that he would not be making any payment on the account. (Wolf Decl. ¶ 14

[Doc. No. 34].)

Target subsequently autodialed Wright's cell phone on May 14, 21, and 31, 2014.

(Id. ¶¶ 15-17; see also Target Log, Ex. F to Lavery Cert. [Doc. No. 22-6 at 114].)

Defendant avers that during the May 21, 2014 call, Wright repeatedly denied any

obligation to pay the balance due on the Target account. (Answer ¶ 16, Ex. A to Lavery

Cert. [Doc. No. 22-1].)   A transcript of that recorded call reflects Wright's dispute about whether he authorized that his name be added to the account:

> Wright:  I want proof of my signature and my authorization and your organization has yet failed to provide that to me.
>
> Target:  Okay
>
> Wright:  If you could provide me with something that says I authorized my name to be associated with the account, I will pay it in full right now. Otherwise if you cannot provide that proof, I am not legally responsible for it, so –
>
> ***
>
> Target:  Sir, the thing – here's the deal.
>
> Wright:  (inaudible) authorized and keep interrupting me.
>
> Target:  Here's the deal.  You're four months past due.  This is affecting your credit.
>
> A:  (inaudible) cease communication until you provide legal verification of the debt to me.
>
> Target: Right now, sir, you're going further past due.
>
> Wright: (inaudible) [provides address].  Have a nice day.
>
> (End of audio recording.)

(Transcript of 5/21/14 Call, Ex. G to Lavery Cert. [Doc. No. 22-7].)  Target's records confirm that Target called Wright on May 21, 2014 and indicate that Wright refused to promise to pay the account balance.  (Def.'s Inquire Account Event Detail, Ex. F to Lavery Cert. [Doc. No. 22-6 at 81].)

Following the May 21, 2014 call, Target's records show that it phoned Wright's cell phone using an autodialing mechanism on the following occasions:

4

(1) May 27, 2014 (Def.'s Inquire Account Event Detail, Ex. F. to Lavery Cert. [Doc. No. 22-6 at 80]; Target's Log, Ex. F to Lavery Cert. [Doc. No. 22-6 at 114]);

(2) May 28, 2014 (id.);

(3) May 29, 2014 at 10:51 a.m. (Target's Log, Ex. F to Lavery Cert. [Doc. No. 22-6 at 114]);

(4) May 29, 2014 at 11:02 a.m. (Def.'s Inquire Account Event Detail, Ex. F to Lavery Cert. [Doc. No. 22-6 at 80]; Target's Log, Ex. F. to Lavery Cert. [Doc. No. 22-6 at 114]);

(5) May 30, 2014 (id.);

(6) May 31, 2014 (Target's Log, Ex. F to Lavery Cert. [Doc. No. 22-6 at 114]; TSYS Archived Notes, Def.'s Ex. C [Doc. No. 36-3 at 8]);

(7) June 3, 2014 at 7:48 a.m. (Target's Log, Ex. F to Lavery Cert. [Doc. No. 22-6 at 114]);

(8) June 3, 2014 at 3:39 p.m. (Def.'s Inquire Account Event Detail, Ex. F to Lavery Cert. [Doc. No. 22-6 at 78]; Target's Log, Ex. F. to Lavery Cert. [Doc. No. 22-6 at 114]);

(9) June 4, 2014 at 7:44 a.m. (Target's Log, Ex. F to Lavery Cert. [Doc. No. 22-6 at 114]);

(10) June 4, 2014 at 2:00 p.m. (Def.'s Inquire Account Event Detail, Ex. F to Lavery Cert. [Doc. No. 22-6 at 77]; Target's Log, Ex. F to Lavery Cert. [Doc. No. 22-6 at 114]);

(11) June 5, 2014 (Target's Log, Ex. F to Lavery Cert. [Doc. No. 22-6 at 114].)

5

During Target's May 31, 2014 autodialed call to Wright's cell phone, Wright told

Target's representative to speak to his lawyer, although Defendant contends that Wright

hung up without giving the lawyer's name or contact information.  (Wolf Decl. ¶ 17

[Doc. No. 34].)  Target's call records for this call indicate that "[WRIGHT] IS GOING

THROUGH A DIVORCE AND DID NOT KNOW HIS WIFE ADDED HIM TO THE

ACCT. [WRIGHT] STATE [sic] SPEAK TO LAWYER AND HUNG UP ON ME

DURING CALL."  (Def.'s 5/31/14 Inquire Account Event Detail, Ex. F to Lavery Cert.

[Doc. No. 22-6 at 79]) (emphasis in original).

After Target's May 31, 2014 call with Wright, his attorney, David Menditto, called

Target that same day and asked that Target cease phoning Wright.  (Wolf Decl. ¶ 18

[Doc. No. 34].)  A Target representative informed Menditto that Target could not speak

with him about the account without a power of attorney on file.  (Id.)  Target's records

confirm the phone call with Attorney Menditto, who provided his firm name and phone

number.  (Def.'s 5/31/14 Inquire Account Event Detail, Ex. F to Lavery Cert. [Doc. No.

22-6 at 79].)

On June 4, 2014, an unidentified third party phoned Target about Wright's

account.  (Wolf Decl. ¶ 19 [Doc. No. 34].)  The Target employee who took the call

informed the third party that Target could not speak about the account unless it had a

power of attorney on file.  (Id.)

Wright filed this lawsuit on July 29, 2014, asserting one cause of action for

violation of the TCPA.  In its Answer, Target asserts that Wright had expressly consented

to the calls.  (Answer ¶¶ 28-30 [Doc. No. 8].)  While Wright contends that he revoked his

prior express consent, Target argues that revocation is unavailable under the TCPA and that any alleged revocation was ineffective.  (Id. ¶ 31.)

On Wright's Motion for Partial Summary Judgment, he asserts that there are no disputed issues of material fact with respect to Target's liability for calls made after May 21, 2014.  In opposition to Plaintiff's motion and in support of Defendant's Motion for Summary Judgment, Target argues that Wright expressly consented to receive all calls made by Target and that Wright could not unilaterally revoke his prior express consent, as the consent was embodied in a bilateral contract.

## II.    DISCUSSION

### A.    Standard of Review

Summary judgment is proper if, drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986).  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp., 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed.  Id. at 323.  However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine

issue for trial." <u>Anderson</u>, 477 U.S. at 256. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." <u>Id.</u> at 248. Moreover, summary judgment is properly entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322. Defendant moves for summary judgment on all three of Plaintiffs' claims.

### B.   Telephone Consumer Protection Act (TCPA)

Under the TCPA, it is unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227 (b)(1)(A)(iii).

The TCPA further defines the term "automatic telephone dialing system" to mean "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." <u>Id.</u> § 227(a)(1)(A), (B). The TCPA grants consumers, such as Plaintiff, a private right of action, with provision for $500 or the actual monetary loss in damages for each violation, whichever is greater, and treble damages for each willful or knowing violation. <u>Id.</u> § 227(b)(3).

8

In order for Plaintiff to establish Target's liability under the TCPA for calls made after May 21, 2014, he must prove that Target called his cellular telephone number "using an automatic telephone dialing system" or "an artificial or prerecorded voice," without his "prior express consent."  Steinhoff v. Star Tribune Media Co., LLC, No. 13-cv-1750 (SRN/JSM), 2014 WL 1207804, at *2 (D. Minn. Mar. 24, 2014) (citing Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012)).

Certain facts in this case are not in dispute.  Defendant admits it made the calls to Wright's cell phone and admits that it used an automated dialing system.  (See Answer ¶¶ 5, 11, 14, 25 [Doc. No. 8]).  Wright signed the Joint Account Agreement and provided his cell phone number directly under the language in the agreement consenting to the receipt of autodialed calls placed to his cell phone number.  (Joint Account Agreement, Ex. F to Lavery Cert. [Doc. No. 22-6 at 15].)  Moreover, he admits that he gave his prior express consent for Target to autodial his cell phone.  (Pl.'s Am. Resp. to Req. for Admission ¶¶ 12-13, Ex. C to Lavery Cert. [Doc. No. 22-3].)

The resolution of the instant motions therefore turns on the revocation of consent. As a general matter, Target argues that consent may not revoked under the TCPA, and, in particular, that Wright could not unilaterally revoke his prior express consent.  (See Def.'s Mem. Supp. Mot. for Summ. J. at 10-33 [Doc. No. 33]); Def.'s Opp'n Mem. at 3-14 [Doc. No. 39].)  Wright, however, contends that he expressly revoked his consent and is entitled to summary judgment for all claimed violations of the TCPA occurring after this alleged revocation.  (Pl.'s Mem. Supp. Mot. for Partial Summ. J. at 10-16 [Doc. No. 21]; Pl.'s Opp'n Mem. at 8-12 [Doc. No. 37].)

### 1.      Revocation of Prior Express Consent

The TCPA is silent on the question of whether consent may be revoked, as the

Federal Communications Commission ("FCC") recently acknowledged: "[N]either the

text of the TCPA nor its legislative history directly addresses the circumstances under

which prior express consent is deemed revoked."  In re Rules & Regulations

Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C.R. 7961, ¶ 63 (July 10,

2015) (citation omitted).  Perhaps not surprisingly, courts have reached contradictory

conclusions on this issue, with some courts finding that revocation is not permitted under

the TCPA, see, e.g., Kenny v. Mercantile Adjustment Bureau, No. 10-CV1010, 2013 WL

1855782, at *7 (W.D.N.Y. May 1, 2013), but others finding that revocation is permitted,

see, e.g., Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1255-56 (11th Cir. 2014).

The Eighth Circuit has not directly ruled on this issue.

The FCC resolved the question of whether consent may be revoked in an order that

it released on July 20, 2015 entitled In the Matter of Rules and Regulations Implementing

the Telephone Consumer Protection Act of 1991, Declaratory Ruling and Order, FCC

15–72, 30 F.C.C.R. 7961 (July 10, 2015) [hereinafter, "2015 FCC Order"].  In the 2015

FCC Order, the FCC determined that "[c]onsumers have the right to revoke consent,

using any reasonable method including orally or in writing.  Consumers generally may

revoke, for example, by way of a consumer-initiated call, directly in response to a call

initiated or made by a caller, . . . .  (Id. ¶ 64.)  Moreover, the FCC found that the right of

revocation did not implicate business's rights to communicate with their customers, as

they could still manually dial customers' numbers without invoking the TCPA's

10

prohibitions against autodialed calls.  (Id. ¶62.)

This court is bound by the FCC's interpretations of the TCPA, unless those interpretations are invalidated by a court of appeals.  See 28 U.S.C. § 2342 et seq. (the "Hobbs Act").  The 2015 FCC Order is currently on appeal before the Court of Appeals for the District of Columbia.  See ACA Int'l v. FCC, No. 15-1211 (D.C. Cir. July 10, 2015) (consolidated appeal).

Following oral argument on the instant motions, the parties submitted supplemental briefing ([Pl.'s Sur-Reply [Doc. No. 45]; Def.'s Sur-Reply [Doc. No. 46]) regarding whether the 2015 FCC Order is retroactively applicable, and if so, whether it can be applied to Target without doing manifest injustice.  See AT&T v. FCC, 454 F.3d 329, 332 (D.C. Cir. 2006) (noting that courts only depart from retroactive application of adjudications when doing so would lead to "manifest injustice.").

It appears that no court has yet addressed the question of retroactivity of the 2015 FCC Order.  However, in King v. Time Warner Cable, __ F. Supp.3d __, No. 14 Civ. 2018 (AKH), 2015 WL 4103689, at *5 (S.D.N.Y. July 7, 2015), the court relied on a June 18, 2015 FCC press release about the then-pending 2015 FCC Order, as well as the Third Circuit's decision in Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 270-72 (3d Cir. 2013), to support its conclusion that consumers have the authority to revoke their consent to receive autodialed calls in any reasonable way, at any time.  In determining that the plaintiffs in Reardon v. Uber Technologies, Inc., No. 14-CV-05678-JST, 2015 WL 4451209, at *10 (N.D. Cal. July 19, 2015), had sufficiently pleaded their TCPA claim, the court cited authority supporting the revocation of consent under the TCPA and also

observed that the 2015 FCC Order permits revocation of consent.  While this Court noted the recent 2015 FCC Order in Soular v. Northern Tier Energy LP, No. 15-cv-556 (SRN/LIB), 2015 WL 5024786, at * (D. Minn. Aug. 25, 2015), and Smith v. Securus Technologies, Inc., __ F. Supp. 3d __, No. 15-cv-550 (SRN/HB), 2015 WL 4636696, at *5, n.1 (D. Minn. Aug. 4, 2015), neither ruling involved the precise issue here, nor did those matters require the Court to address the retroactivity of the 2015 FCC Order.

As an independent agency, the powers of the FCC are both quasi-judicial and quasi-legislative.  Morrison v. Olson, 487 U.S. 654, 687, n.25 (1988) (citing Humphrey's Ex'r v. United States, 295 U.S. 602, 628 (1935)).  Agency adjudications generally have retroactive effect, while rules resulting from agency rulemaking are presumed to have prospective effect.  Qwest Servs. Corp. v. FCC, 509 F.3d 531, 535 (D.C. Cir. 2007). An FCC decision is considered quasi-judicial if it does "'not purport to engage in formal rulemaking or in the promulgation of any regulations' but instead amounts to an adjudication of the rights and obligations of parties before it."  Town of Deerfield, N.Y. v. FCC, 992 F.2d 420, 427 (2d Cir. 1993) (quoting FCC v. Pacifica Found., 438 U.S. 726, 734 (1978)).  Moreover, "[t]he mere presence in the decision of general statements that might have applicability to controversies between other persons does not change the character of an order from one that is essentially adjudicatory to one that is quasi-legislative."  Id.  In determining whether an agency decision constitutes an adjudication or rulemaking proceeding, courts

> have drawn a distinction between agency decisions that "substitut[e] . . . new law for old law that was reasonably clear" and those which are merely "new applications of existing law, clarifications, and additions."  The latter

carry a presumption of retroactivity that we depart from only when to do otherwise would lead to "manifest injustice."

Qwest, 509 F.3d at 539 (quoting AT&T v. FCC, 454 F.3d at 329, 332 (alteration and omission in original) (citations omitted).

Nearly all of the twenty-plus consolidated petitions to the FCC underlying the 2015 FCC Order were framed as petitions for declaratory rulings or clarifications, with only one petitioner framing its petition as a request for rule making.  2015 FCC Order, 30 F.C.C.R. 7961(caption).  Moreover, the portion of the 2015 FCC Order regarding the revocation of consent states that it is clarifying prior law: "[W]e clarify that consumers may revoke consent through any reasonable means."  Id. ¶ 55.  However, as Defendant notes, the Order is styled as "In the Matter of Rules and Regulations Implementing the [TCPA] of 1991"  (id. at 7961) (emphasis added), and applies across the board to the entire regulated industry, rather than being limited to particular parties or an industry subset.  See Hoffman-La Roche, Inc. v. Kleindienst, 478 F.2d 1, 33 (3d Cir. 1973) (finding that the general, industry-wide application of a proceeding constituted, in substance, rule making).

Certainly, if the 2015 FCC Order is an adjudication, the Court is obliged to retroactively apply the FCC's interpretation of the TCPA.  But the Court need not resolve the question here.  Even assuming that the FCC exercised its rulemaking authority in the 2015 FCC Order – with prospective, non-retroactive effect – the Court would nonetheless independently conclude that revocation of consent is permissible under the TCPA.

While the Eighth Circuit has not ruled on whether prior express consent may be

revoked under the TCPA, the court's decision in <u>Brenner v. Am. Ed. Servs.</u>, 575 Fed.

App'x 703 (8th Cir. 2014) (per curiam), is instructive.  <u>Brenner</u> involved a suit under the

TCPA related to the defendant-creditor's calls concerning the plaintiff's student loan

debt.  <u>Id.</u>  The Eighth Circuit reversed the district court's entry of summary judgment for

the defendant because the district court had not addressed the issue of revocation of prior

express consent.  <u>Id.</u>  On remand, the Eighth Circuit directed the district court to consider

whether the plaintiff had provided evidence to support the plaintiff's position that he had

revoked his prior express consent.  <u>Id.</u>  While the court in <u>Brenner</u> only presented the

question of whether revocation of consent is effective under the TCPA, in doing so, it

stated, "if Brenner effectively revoked his consent, summary judgment [for the defendant]

was not proper."  <u>Id.</u> (citing <u>Osorio</u>, 746 F.3d at 1255-56; <u>Gager</u>, 727 F.3d at 270-72).

The <u>Osorio</u> and <u>Gager</u> decisions cited by the Eighth Circuit both permitted revocation of

prior express consent; the Eighth Circuit cited no authority to the contrary.  This suggests

that the Eighth Circuit considered revocation of consent permissible under the TCPA, as

there would be no need for the district court to address the question on remand if

revocation of consent was not permitted.  In a subsequent district court case, <u>Buchholz v.</u>

<u>Valarity, LLC</u>, No. 4:14CV362 TIA, 2014 WL 5849434, at *5-7 (E.D. Mo. Nov. 12,

2014), our sister court relied upon <u>Brenner</u> and other cases in concluding that the oral

revocation of consent is cognizable, as a matter of law, under the TCPA.

   One reason given by courts permitting the revocation of consent is that such an

interpretation is consistent with the broad, remedial objectives of the TCPA:

   The TCPA is a remedial statute that was passed to protect consumers from

unwanted automated telephone calls. Because the TCPA is a remedial statute, it should be construed to benefit consumers. As a result, we should interpret in [the plaintiff's] favor any silence in the TCPA as to a revocation right. Therefore, the TCPA's silence as to revocation should not be seen as limiting a consumer's right to revoke prior express consent. Instead, we view the silence in the statute as evidence that the right to revoke exists.

Gager, 727 F.3d at 271 (citations omitted); see also Osorio, 746 F.3d at 1255; Buchholz,

2014 WL 5849434, at *7. The Court agrees with this reasoning. For all of the foregoing

reasons, the Court finds that revocation of prior consent is cognizable under the TCPA.

### 2.    Consent Clause in Credit Agreement

Defendant also argues that Wright could not unilaterally alter the consent term in

the parties' credit agreement, because it was an integral and essential part of the bilateral,

written agreement. (Def.'s Mem. Supp. Mot. for Summ. J. at 11-15 [Doc. No. 33].)

As noted, the TCPA requires prior express consent for entities such as Defendant

to place autodialed calls to its customers. 47 U.S.C. § 227(b)(1)(B). The Court is

persuaded by the reasoning of the Third Circuit in Gager that the prior express consent to

receive autodialed phone calls is not an essential element of the contractual relationship

between the parties. As that court explained:

Dell asserts that basic principles of contract law should preclude Gager from revoking her prior express consent. In short, Dell posits that a creditor will want to know in advance whether a credit applicant will consent to automated phone calls and that this knowledge is part of the "consideration" that the applicant offers in support of her application. Although Dell is correct that the level of contact that a debtor will consent to may be relevant to the negotiation of a line of credit, the ability to use an autodialing system to contact a debtor is plainly not an essential term to a credit agreement. More importantly, Dell's argument that its contractual relationship with Gager somehow waives her rights under the TCPA is incorrect. The fact that Gager entered into a contractual relationship with Dell did not exempt Dell from the TCPA's requirements. As discussed above, she retained the

right to revoke her prior express consent.

Id. at 273-74.  That same reasoning applies here.  In his Amended Answers to Defendant's Requests for Admission, Wright admits that while he could not unilaterally alter the interest charges or late fees applicable to his Target credit card account, he could revoke his consent to be contacted on his cell phone by an autodialed call from Target (Pl.'s Am. Answers to Req. for Admission ¶¶ 16-18, Ex. C to Lavery Cert. [Doc. No. 22-3]), as the parties' agreement is governed by federal law.  (Target Consumer Credit Agreement ¶ 12, Ex. F to Lavery Cert. [Doc. No. 22-6 at 19].)  The essential terms of the parties' agreement related to use of the credit card, payments, interest charges, and the calculation of fees.  The particular form and manner in which Target could contact Wright was not an essential part of the agreement.  Moreover, noted herein, the Court finds that revocation of prior express consent is permitted under the TCPA.

### 3.    Material Issues of Disputed Fact

Having determined that revocation of consent is permitted, on summary judgment, the Court must consider whether oral revocation was established here, such that there are no disputed issues of material fact.  The Court finds that whether Wright effectively revoked his consent remains a disputed issue of fact.  The transcript of the May 21, 2015 call reveals that Wright disputed his obligation to pay the debt and Wright's comment to "cease calling" was conditional upon Target providing proof that he owed the debt. (Transcript of 5/21/14 Call, Ex. G to Lavery Cert. [Doc. No. 22-7].)  (Wolf Decl. ¶ 18 [Doc. No. 34].)  While Wright's attorney subsequently asked that the communications cease, Target's representatives stated that they were not authorized to speak with the

16

attorney about Wright's account, absent a power of attorney on file.  (Wolf Decl. ¶¶ 18-19 [Doc. No. 34].)  Target has not received a power of attorney authorizing it to communicate with a third party about Wright's account.  (Id. ¶ 20.)  Accordingly, the Court finds that the dispute regarding revocation precludes the entry of summary judgment for either party.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1.   Plaintiff's Motion for Partial Summary Judgment [Doc. No. 19] is **DENIED**; and

2.   Defendant's Motion for Summary Judgment [Doc. No. 31] is **DENIED**.


Dated: December 14, 2015                     s/Susan Richard Nelson
                                             SUSAN RICHARD NELSON
                                             United States District Judge

17